# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 14, 2008

## STATE OF TENNESSEE v. JOHN DOUGLAS DUKE

### Direct Appeal from the Criminal Court for Davidson County
### No. 2005-D-2641    Steve Dozier, Judge

_____

### No. M2007-00430-CCA-R3-CD - Filed May 30, 2008

_____

The Defendant, John Douglas Duke, pled guilty to statutory rape. In accordance with the plea agreement, the Defendant accepted a sentence of eighteen months, with the trial court to determine the manner of service of sentence. After the sentencing hearing, the trial court denied the Defendant an alternative sentence and ordered him to serve his sentence in the workhouse. The Defendant appeals, contending that the trial court erred when it denied him an alternative sentence. After reviewing the record and applicable authorities, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the Appellant, John Douglas Duke.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Pamela Anderson and Amy H. Eisenbeck, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

The Defendant was indicted on charges of statutory rape, with the indictment alleging that he engaged in sexual penetration with a person who was at least thirteen but less than eighteen years of age and that he was at least four years older than the victim. *See* T.C.A. § 39-

13-506 (2006). The Defendant pled guilty to this offense, and at the guilty plea hearing the State told the court that the evidence at trial would have proven the following:

> [D]uring the first week of December, two-thousand-four, the victim in this case was at Eighty-Eight McCall Street, here in Davidson County, with some friends, when she felt that she had been drugged and was unconscious.
>
> The victim further stated that, when she woke up, she found the Defendant on top of her, having sex with her. She told the Defendant to get off, and he made the statement that he wasn't done yet.
>
> The detective was able to contact the Defendant in this case on February third, two-thousand-five. The Defendant came and spoke with the detective. He advised the detective that he did have sex with the victim, and this happened when she was at his house to visit his sister on a weekend in December.
>
> The victim in this case is fourteen years old; the Defendant is twenty-six years old. Later the victim was interviewed by detectives again, and she stated that she had been drinking beer and smoking marijuana with the Defendant and that she may've gone along with the Defendant's advances at first, but she was not aware of how her pants were pulled down.

Based upon these facts, the trial court accepted the Defendant's guilty plea. At the sentencing hearing, the following evidence was presented: The State offered as proof the Defendant's presentence investigation report. That report showed that the Defendant had several previous convictions: domestic violence in January and February of 2005; resisting arrest and disorderly conduct in 2002; reckless driving in 2000; driving while under twenty-one and impaired in 1998; possession of marijuana in 1998; and theft in 1996.

The Defendant offered the results of his psychological evaluation, which showed that he had a "[b]orderline range of [i]ntelligence," placing him below the "tenth percentile in terms of the general population." The evaluation also showed that the Defendant suffered from anxiety and "extremely low" self-esteem.

The Defendant also offered the results of a Psychosexual Risk Assessment performed to determine his amenability to treatment, risk potential, supervision and monitoring requirements. The assessment stated the Defendant "was denying deviant sexual desires and was dishonest about his true sexual interests. He was trying to 'fake good' in an attempt to appear not to have problems." As for the Defendant's risk assessment, the report indicated that the Defendant's risk "for sexual recidivism is in the moderate low category when considering static predictors of risk for sexual and violent recidivism. His risk is enhanced to moderate-high by his low sexual knowledge, limited intellectual functioning, use of substances, prior criminal misconduct, and his previous supervision failure." Later, the report noted that the Defendant was serving time for violating his probation and that, "Failure to comply with supervised release is one of the highest non-sexual predictors of recidivism and suggests poor compliance with rules." The assessment

further concluded that the Defendant failed to appreciate the seriousness of his actions, stating, "When asked about his actions his response was 'I don't think I did anything wrong.'" The report further stated:

> [The Defendant] will need intensive monitoring and supervision to ensure the safety of young females. His intellectual limitations make him a poor candidate for traditional community based Sex Offender treatment or to effectively self-monitor his behavior and delay gratification. His safety can best be maintained with external measures of monitoring.

The Defendant called his mother, Patricia Duke, to testify. She said that the Defendant lived with her intermittently his whole life. He would occasionally leave her home and move in with his girlfriend, who was also the mother of his child, but he always returned. About this offense, the Defendant told her that the victim "came on" to him by rubbing against him. Duke testified that her son had a low IQ and that he was especially susceptible to suggestion and easily manipulated. She thought that, despite their age difference, her son and the victim were on an equal level mentally due to his low IQ. Duke further testified that, at the time of this incident, the Defendant's girlfriend had left, and the Defendant was in a state of depression.

On cross-examination, Patricia Duke testified that, at the time of this incident, the Defendant lived with her at 88 McCall Street, where this crime occurred. She said that she also had her two daughters living with her, and they were sixteen and eighteen respectively. She said that she was not aware at the time that the Defendant had committed domestic assault against his girlfriend, but she became aware of this later. Duke agreed that the Defendant received probation for his domestic violence conviction and was required to attend certain treatment programs. He did not successfully do so and was required to complete another year of probation. She agreed that the Defendant was in custody at the time of the sentencing hearing, serving time for violating his probation. Duke said she was aware that the Defendant was an alcoholic and used drugs.

Based upon this evidence, the trial court found:

> The Court's reviewed the pre-sentence report; and there were two reports that've been mentioned earlier from the two doctors, the one we've waited on for several months or more . . . in terms of the psycho-sexual risk assessment that we now hav[e] – and the psychological evaluation that we previously had, dating back to June; and am familiar with the sentencing considerations under [40-35-102], purposes for sentencing under [40-35-103].
>
> I'll mention these enhancing and/or mitigating factors, that may or may not apply. But this was an agreed-upon sentence of eighteen months, as a Range One offender, on the Class "E" felony, statutory rape.
>
> So, it's not as though the Court has to determine within a range what sentence should be imposed; but I'll discuss some of these factors, as they apply

-3-

to the actual sentence, as well as discuss the [40-35-103] section that I've mentioned earlier about sentencing considerations.

Without question the Defendant has a previous history of criminal convictions and . . . criminal behavior. Those are set out in the pre-sentence report, including multiple domestic-violence convictions, disorderly conduct, driving under the influence, simple possession, and the acknowledged drug usage, some of which would've occurred during the pendency of this case.

In addition, the Defendant . . . has a previous issue with his willingness to comply with probation, based on the pre-sentence report and the issues he's had . . . and is having and has resulted now in his sentence in White County being imposed.

The pre-sentence report sets out prior problems he's had on that probation, including drug usage, and, while on bond on this case, as I've already mentioned, the drug usage.

In terms of mitigating factors, we have present, and it's set forth in the one that talks about suffering from mental – not necessarily mental illnesses, but the – the I.Q. situations.

He has a severe substance abuse problem[], but he didn't want to get treatment, through group sessions or otherwise, because he had, quote, better things to do; and sets out to some extent – and we've gone over that here in the hearing – about what he felt like this situation presented to him, that it was the fourteen-year-old's fault and he just couldn't control himself, because she came on to him and abused him, in the way that she did that.

. . . .

[Defense counsel] is right, that the statute tells courts to consider "E" felonies for probation, under the facts and circumstances presenting them[selves] to a court, per that particular defendant, which is what [we]'ve all been talking about, things that apply specifically to [the Defendant].

So, he's without question eligible for alternative sentencing. The psycho-sexual evaluation talks about various things that the Court might consider: controlling his use of pornography, making him take polygraphs about his sexual urges, electronic monitoring, curfews, employment verification, no access to a computer; you know, follow up obviously with medical personnel, in terms of medications or for treatment, that might continue to be needed.

But here today all – all I've heard is, let him out, let him go live with his current . . . partner or live with his mom, which I just don't think is the right thing to do, based on the proof that's been presented to me here today.

Even the psycho-sexual evaluation says – and it sets forth some of what I've mentioned about prior probation and recidivism and domestic violence doesn't . . . normally suit itself to rehabilitation; and . . . makes the statement that, "Failure to comply with supervised release," which is what hasn't occurred, "is one of the highest non-sexual predictors of recidivism and suggest poor compliance with rules."

So, if I were to fashion some plan, along these recommendations that I've already mentioned, about polygraphs and electronic monitoring, the psycho-sexual evaluation is telling me there's poor likelihood of compliance, based on past efforts.

Although statutory rape is an "E" felony, it is still a crime and still courts can factor in confinement being necessary to avoid the seriousness of that offense.

So, based on all of that, at this point – not saying he's gone to the pen; he won't go to the pen – I'm go[ing to] impose the sentence that was agreed upon, to serve consecutive to the other, White County sentence, because of the failure to comply with previous release and having the – again, albeit not extremely lengthy, but for his age a lengthy criminal history on multiple misdemeanors, run it consecutive with the White County case.

When he serves that and if he comes up with a better plan, in terms of mental-health treatment, a better place to stay, someone that isn't go[ing to] get him out today and say, "You didn't do anything wrong. Go do it again," then I'll look at it.

It is from this judgment of the trial court that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied him an alternative sentence. He asserts that the trial court erred when it considered enhancement factors in making its sentencing determination. Further, he argues that, because the length of the sentence was agreed to by the parties, the trial court should only have considered the factors of Tennessee Code Annotated sections 40-35-102 through -104 when making its determination about an alternative sentence.

When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-

401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, T.C.A. § 40-35-103, we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducing a de novo review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing, (2) the presentence report, (3) the principles of sentencing, (4) the arguments of counsel relative to sentencing alternatives, (5) the nature and characteristics of the offense, (6) any mitigating or enhancement factors, (7) any statements made by the defendant on his or her own behalf, and (8) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2006), Sentencing Comm. Cmts.

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. T.C.A. § 40-35-303(a) (2006). Further, a "standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6) (2006). Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b). In determining whether to grant or deny probation, the trial court may consider the following: the circumstances of the offense; the defendant's criminal record; background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant bears the burden of establishing suitability for probation. T.C.A. § 40-35-303(b); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Sentences involving confinement should be based upon the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2006). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* T.C.A. § 40-35-103(2),(4) (2006). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. *See* T.C.A. § 40-35-103(5).

We first conclude that the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act. Therefore, we review its conclusion de novo with a presumption of correctness. The trial court "mention[ed]" the enhancement and mitigating factors that applied. It found that the Defendant had a history of criminal convictions and a history of unwillingness to comply with conditions of release. The Defendant asserts that this is not an appropriate consideration for the trial court because the parties agreed to the duration of the sentence. We disagree. Tennessee Code Annotated section 40-35-210(b) directs the trial court to consider evidence and information offered by the parties on enhancement and mitigating factors when imposing sentences. It does not indicate that these factors should only be considered when determining "the duration" of a sentence. Further, we have previously upheld the trial court's consideration of enhancement factors when denying an alternative sentence. *See State v. Clifford Wayne Morris*, No. E2005-01957-CCA-R3-CD, 2006 WL 3071333, at *6 (Tenn. Crim. App., at Knoxville, Oct. 30, 2006) (holding the trial court properly applied one of two enhancement factors when denying the defendant an alternative sentence), *no perm. app. filed*.

Further, we conclude that the trial court based its denial of an alternative sentence on appropriate considerations. The trial court found that the Defendant had a long criminal history, considering the Defendant's age. The trial court also considered the Defendant's mental health, as revealed by the psycho-sexual evaluation. The report concluded that there was a poor likelihood that the Defendant would comply with the terms of probation. Finally, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. The evidence does not preponderate against the trial court's findings. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

 

_____
ROBERT W. WEDEMEYER, JUDGE